IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED   STATES   OF AMERICA,        )
                     )
                     )
  -vs-                         )
                            Criminal No. 05-93
LEONARD E. BROOKS,        )
                     )
           Defendant.      )

AMBROSE, Chief District Judge.

## FINDINGS OF FACT

## CONCLUSIONS OF LAW

_____and

## ORDER OF COURT

**FINDINGS OF FACT**

    1.  On March 24, 2005, Ohio State Trooper Larry Barrett was on routine patrol of Interstate 70, a known drug trafficking pipeline.  Barrett was stationary at a paved crossover in a marked canine unit vehicle.

    2.  At approximately noon on that date, Barrett observed a gold Chevrolet Suburban passing a tractor-trailer in the left lane.

    3.  Once the driver of the Suburban saw Barrett, he straddled the center line for 1/8 to 1/4 mile, then pulled behind a second tractor-trailer and followed it at what Barrett believed to be  an unsafe distance.

    4.  Because he considered the driver of the Suburban to have dramatically changed his driving behavior when he saw the police officer and to have violated

Ohio driving laws, Barrett stopped the Suburban and the driver, Defendant Leonard Brooks, exited the car.  Defendant produced a license and said the vehicle was registered in the name of his wife, who was a passenger in the Suburban.

_____ 5.  Defendant said he and his wife had been in California for four (4) to five (5) days visiting family.  Defendant was nervous, made no eye contact with the trooper, shifted from foot to foot and smoked heavily.  Defendant was unable to give the name of the city in California where he had been.

6.  Barrett then approached Defendant's wife, who was in the passenger seat. She told Barrett they had been in Norwalk, California for one (1) week and, initially, that they had stayed with family and later, that they had stayed in a hotel.

7.  Barrett smelled a strong odor of air freshener coming from the Suburban and noticed numerous fast-food wrappers within the Suburban.  Barrett believed that these were some indication of drug trafficking:  the air freshener masked the smell of drugs and fast-food wrappers demonstrated travelers in a hurry to reach their destination.

8.  Because of the inconsistencies between the statements of Defendant and his wife, their nervous behavior, the air freshener and fast-food wrappers, Barrett returned to his police car and asked for a criminal history check on Defendant and his wife and radioed Trooper Sims for assistance.

9.  Trooper Sims, with a canine unit, was approximately 1/3 mile away.  He had stopped a box truck and requested Barrett to bring the Suburban, the Defendant and his wife, to the canine unit.  Defendant and his wife, followed by Barrett,

2

traveled the short distance to Sims' location.

10.  Barrett wanted a canine search of the Suburban because of his suspicion that Defendant and his wife were involved in transporting narcotics.

11.  Sims is a canine officer and Barrett asked Sims to allow Sims' dog to walk around the Suburban.  It is a practice of the Ohio Highway Patrol for troopers to use other troopers dogs, if possible, to eliminate any possibility of bias.

12.  Sims' dog, Zeus, is responsible for the largest marijuana seizure in Ohio. Zeus and Sims successfully completed four (4) week-long training sessions.  Sims and Zeus are certified by the North American Police Work Dog Association and the Ohio Peace Officers Training Commission and were certified at the time of this incident. Sims and Zeus have participated in several maintenance training exercises.  Zeus has proven to be very accurate in detecting narcotics.

13.  When Barrett walked Zeus around the Suburban, Zeus alerted.

14.  When Barrett asked Defendant's wife why the dog would alert, she said that her aunt, the Suburban's owner, regularly smoked marijuana in the car and that she had pain medicine in the car.

15.  Barrett called for backup.  When it arrived, he and Sims began to search the Suburban.

16.  On the seat in the rear of the car, was a well-insulated Igloo cooler with thick walls.  Barrett observed that the rear lid screw looked like it had been reworked.

17.  Barrett got a screwdriver, took the lid off the cooler, and observed a

3

vacuum sealed bag in between the liners.  The bag was of the type in which drugs are normally kept.  When Barrett pulled apart the cooler liners, he discovered six (6) bricks of cocaine.

18. Defendant and his wife were arrested, handcuffed and Mirandized, having been instructed to say nothing until the warnings were given.

19.  Defendant acknowledged  his understanding of the warnings and was very coherent and alert.

20.  Defendant voluntarily advised Barrett that he had been paid three thousand dollars ($3,000.00) to bring the cooler of drugs from California to Braddock, Pennsylvania, and agreed to participate in a controlled delivery.

**CONCLUSIONS OF LAW**

1.  Trooper Barrett's stop of Defendant  was lawful in that he had observed Defendant violating Ohio traffic laws:  failing to drive within a marked lane and following too closely.

2.  Once Barrett stopped Defendant, his questions to Defendant about his travel were reasonable and lawful and did not unnecessarily prolong the stop.

3.  Upon questioning Defendant and his wife, the following facts made Barrett reasonably believe that criminal activity was afoot:

> (a)  Defendant was very nervous, made no eye contact with Barrett, shifted his feet and smoked heavily.  He was also unable to name the city where he had been visiting;
>
> (b)  Defendant's wife was very nervous; her hands trembled;
>
> (c)  there was a strong odor of air freshener in the car,

which is commonly used by drug traffickers to conceal the smell of drugs;

(d)  Defendant and his wife varied in their accounts of how long they had been in California:  Defendant a week and his wife, four (4) to five (5) days and where they had stayed:  at first, they stated they had stayed with family, and, later, they said they had stayed at a hotel;

(e)  Defendant was driving erratically;

(f)  Interstate 70 has a reputation as a major drug pipeline; and,

(g)  California is a location where illegal drugs are commonly obtained.

4.  The totality of the above circumstances, reasonably led Barrett to call for another canine unit for the purpose of probing the situation further.

5.  The canine used by Barrett to further the probe was Zeus, a duly trained and certified K-9 detection dog who was responsible for the largest marijuana seizure in Ohio.  Zeus had been used by Barrett approximately forty (40) times and had been very reliable in those situations.

As a result, I conclude that Zeus was sufficiently reliable under the totality of the circumstances.

6.  The reliable canine's alert to the Suburban, together with the circumstances set forth above, gave the Ohio state troopers probable cause to search the Suburban.

7.  Defendant's statements to Barrett were made after he was informed of all his rights under Miranda v. Arizona, 384 U.S. 436 (1966).

8.  Defendant's statements were made voluntarily, without threats or use of

physical force by Barrett.

9.  Because there was probable cause for the search of Defendant's vehicle and Defendant's arrest, the Defendant's statements are admissible.

* * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED   STATES   OF AMERICA,                    )
                                                 )
                                                 )
    -vs-                                          )
                                                      Criminal No. 05-93
LEONARD E. BROOKS,                               )
                                                 )
              Defendant.                         )

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **2ⁿᵈ**, day of June, 2006, it is Ordered that Defendant's Motion to Suppress Evidence and Statements (Docket No. 46-1) is Denied.

Trial is scheduled for  June 26, 2006, at 9:30 A.M.  To be considered by the Court, proposed voir dire and jury instructions are due by  June 19, 2006.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge

7